849 So.2d 1275 (2003)
In re William M. HOPPOCK.
No. 2002-CS-01684-SCT.
Supreme Court of Mississippi.
July 24, 2003.
*1276 William M. Hoppock, pro se.
WALLER, Justice, for the Court.
¶ 1. We have experienced repeated difficulties in getting trial court transcripts from court reporter William M. Hoppock in numerous cases. After Hoppock failed to correct the problems, a panel of this Court ordered Hoppock to appear at a show cause hearing and then at a subsequent contempt hearing. Upon review of Hoppock's conduct as a court reporter, we find that Hoppock is in willful contempt of court and should be sanctioned.

FACTS
¶ 2. William M. Hoppock served as the court reporter for Rankin County Chancery Judge Thomas L. Zebert until mid 2002. In recent years, Hoppock's delinquencies in completing appellate court transcripts posed a recurring problem in the Mississippi appellate courts. We issued numerous monetary sanctions orders against Hoppock for his failure to file transcripts on time in cases on appeal. Those sanctions alone were not successful in inducing Hoppock to complete his transcripts in a timely manner. After monetary sanctions failed to get action from Hoppock on transcripts in several cases, we ordered Judge Zebert to replace Hoppock and to appoint a substitute court reporter to complete those overdue transcripts. In those cases, Hoppock was also required to cooperate with the replacement court reporter and to turn over his notes and tapes so that the transcript could be completed by the substitute.
¶ 3. Concurrently with our attempts to obtain some level of compliance from Hoppock, the Mississippi Board of Certified Court Reporters initiated an investigation of Hoppock's delinquencies. On June 25, 2002, the Mississippi Board of Certified Court Reporters suspended Hoppock for a year from further activities as a court reporter.
¶ 4. The Board's suspension order specifically required Hoppock to complete the transcripts then pending and to file monthly reports detailing his progress in those cases still pending. Hoppock failed to comply with that order and failed to pay past-due sanctions from other cases as ordered by this Court. The court reporters who had replaced Hoppock in those cases in which he had been removed reported that he had not complied with the order requiring him to cooperate with the replacement in seeing that the transcripts were completed.
¶ 5. In view of those facts, we ordered Hoppock to appear in person at a show cause hearing before a panel of this Court. On October 10, 2002, the panel ordered Hoppock to address eight separate cases in which it appeared that he had failed to comply with our orders. In five of those cases, Hoppock had not turned over his transcription notes, tapes and other necessary materials to the replacement court reporter. In those same five cases and in three additional cases, Hoppock had not paid court-ordered sanctions. The total amount of those sanctions was $1200. Additionally, the October 10 order required Hoppock to show cause why he had not complied with the order of the Mississippi Board of Certified Court Reporters.
¶ 6. The hearing was set for October 29, 2002, in the Supreme Court courtroom. The notice specifically informed Hoppock that he was to show cause why he should not be sanctioned further in eight specific cases and for failing to comply with the Court Reporter Board's order. The order informed him that he would be allowed to *1277 call witnesses and present testimony if he so desired. Finally, the order required Hoppock to bring all remaining notes, tapes and other transcription materials with him when he appeared at the hearing.
¶ 7. After the October 10 show cause order was issued, Hoppock paid the $1200 in sanctions which were then outstanding. He presented a check to the Clerk of the Court on October 25, 2002. Thus, other than the tardiness of his payment, no issue remained regarding unpaid sanctions owed.
¶ 8. A hearing on the remaining charges listed in the show cause order was held before a panel of this Court on October 29, 2002. Hoppock appeared and was not represented by counsel. C. Alleen McLain, the Mississippi Bar's representative on the Board of Certified Court Reporters, presented the contempt action to the panel. The primary claims against Hoppock at the show cause hearing related to his conduct in three cases. In Spang v. Tullos, No.2002-TS-00200, Moore v. Bell, No.2002-TS-00536, and Strain v. Strain, No.2001-CA-01628, Hoppock had been removed as court reporter and had been ordered to turn his tapes, notes and other materials over to the substituted court reporter in each of those cases. The transfers were due in August and September of 2002.
¶ 9. At the show cause hearing, court reporter Linda Sudduth was called to testify about her involvement in the Spang, Moore, and Strain cases. Judge Zebert appointed Sudduth to replace Hoppock in those cases after Hoppock's removal by this Court. Sudduth testified that Hoppock did not turn over any materials pertaining to those three cases until October 28, 2002, which was the day before the show cause hearing. Hoppock had been ordered to turn over his tapes and notes to the replacement court reporter in those cases in August and September of 2002. When he did finally relinquish the materials on October 28, they were in substantial disarray, and some of the tapes and notes were unusable.
¶ 10. The October 10 show cause order also referenced two cases in which Cheryl Pemberton had been appointed by Judge Zebert to replace Hoppock. Those two cases were Gill v. McIntyre, No.2001-TS-01927, and Watson v. Watson, No.2002-TS-00032. Pemberton claimed that Hoppock had not paid her the court reporter's fee in Gill. Pemberton did not appear at the hearing, and the record is incomplete as to Hoppock's cooperation or lack thereof in those two cases. The appeal in Watson was dismissed in April of 2003, and the appeal in Gill was dismissed in March of 2003 by agreement of the parties.
¶ 11. The show cause order also listed three other cases in which Hoppock had been sanctioned for failure to perform his duties. In those cases, Hoppock had been ordered to tender payment months earlier, but he had not paid the sanction. As noted, Hoppock submitted a check to the Clerk of the Court and paid all overdue sanctions on October 25, 2002.
¶ 12. Finally, the show cause order noted that Hoppock had not complied with the order of the Mississippi Board of Certified Court Reporters which had required him to pay all sanctions then due and to file certain monthly reports detailing his progress in the appeals assigned to him which were presently before this Court. At the hearing, Hoppock offered no explanation for his failure to comply with the order of the Court Reporters Board.
¶ 13. Immediately after the show cause hearing before the panel on October 29, we found that Hoppock had not sufficiently shown cause for his failure to comply with numerous Supreme Court orders. The *1278 panel ordered Hoppock to appear on November 18, 2002, and to defend against charges of criminal and/or civil contempt.
¶ 14. Hoppock appeared at the contempt hearing pro se. Alleen McLain again appeared on behalf of the Court Reporters Board. The testimony was similar to that produced at the initial hearing. Linda Sudduth testified that she still had not received complete assistance from Hoppock in the three cases now assigned to her. Hoppock's main defense was that there was confusion about the procedure in which he was to turn over the transcription materials to the replacement court reporters. He also claimed that he had experienced equipment problems and had been unable to work on the appellate transcripts for some amount of time.

DISCUSSION
¶ 15. We are obligated to control our docket in an orderly fashion and to insure that appeals are handled as expeditiously as possible. The contempt power is an important tool for keeping order and maintaining an efficient court system. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (quoting Bessette v. W.B. Conkey Co., 194 U.S. 324, 333, 24 S.Ct. 665, 668, 48 L.Ed. 997 (1904) (contempt power "has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary course of its duties, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors")); Ex parte Robinson, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873) (existence of contempt power "essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice"); Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821) (courts by their creation vested with power "to impose silence, respect, and decorum in their presence, and submission to their lawful mandates").
¶ 16. This Court and the other courts of this State have the inherent authority to hold an officer of the court who appears before a particular tribunal to be in contempt if the officer displays contemptuous conduct toward that court. Wyssbrod v. Wittjen, 798 So.2d 352, 359-60 (Miss.2001); Purvis v. Purvis, 657 So.2d 794, 798 (Miss.1994); Bean v. Broussard 587 So.2d 908, 911 (Miss.1991). See also Jeffery Jackson & Mary Miller, Encyclopedia of Mississippi Law Ch. 20 (2001). Court reporters are officers of the court and therefore fall under this Court's disciplinary authority. Doby v. State, 557 So.2d 533, 536 n. 2 (Miss.1990). See also Rule IX(A)(2) of the Mississippi Rules Governing Certified Court Reporters. By accepting a position as Judge Zebert's official court reporter, Hoppock submitted himself to the authority of the courts of Mississippi and was required to abide by the orders and procedures of this and all other state courts.
¶ 17. In his conduct as an official court reporter, Hoppock has continually been delinquent in the completion of trial transcripts for appeals. He has been sanctioned numerous times in more than ten different cases. In recent years, he has been sanctioned in an amount exceeding $1500. Lesser punishment in the form of monetary sanctions was not successful in ending Hoppock's dilatory practices. We were forced to proceed to the present contempt proceedings when Hoppock ignored other efforts to compel compliance. The question before the Court is whether Hoppock's conduct rises to the level of contempt *1279 and, if so, what should be done about it.
¶ 18. As the allegations here involve the charge that Hoppock has willfully refused to comply with our orders, the contempt here is classified as criminal contempt. Criminal contempt proceedings are "maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court." Varvaris v. State, 512 So.2d 886, 887 (Miss. 1987) (quoting Pugliese v. Pugliese, 347 So.2d 422 (Fla.1977)). Unlike civil contempt which would be ordered to induce prospective compliance with a court order, criminal contempt punishes past conduct. See also Dennis v. Dennis, 824 So.2d 604, 608 (Miss.2002) (noting difference between civil and criminal contempt); Newell v. Hinton, 556 So.2d 1037, 1044 (Miss.1990); Criminal contempt may be found only when the guilty party has willfully, deliberately and contumaciously ignored the court. Premeaux v. Smith, 569 So.2d 681, 683-84 (Miss.1990). Additionally, criminal contempt may be direct or constructive. Generally,
[d]direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed.... Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court....
In re Williamson, 838 So.2d 226, 237 (Miss.2002).
¶ 19. To date, there are no reported cases in which a Mississippi court reporter has been found to be in contempt of court. Other jurisdictions, however, have dealt with contemptuous court reporters.
¶ 20. The state courts of Arkansas have faced court reporter contempt actions in several recent cases. In Poyner v. Arkansas Contractors Licensing Bd., 336 Ark. 83, 985 S.W.2d 298 (1999), the Arkansas Supreme Court considered a case in which a substitute court reporter had failed to obey certain writs ordering her to complete a transcript and for failing to appear at a hearing on the matter. The court reporter pled guilty to the contempt charge and was sentenced to serve four days in the Pulaski County Jail. In Ross v. State, 346 Ark. 180, 55 S.W.3d 770 (2001), the Supreme Court of Arkansas instigated a contempt action against court reporter Madeline McClure for McClure's failure to file seven appellate transcripts. Instead of the appellate court sitting as fact finder, the appellate court there appointed a special master to conduct the evidentiary hearing. Upon review of the special master's findings, the Arkansas Supreme Court found that McClure was in willful contempt of court for her failure to comply with that court's orders. It noted that McClure was subject to a fine, incarceration, or both. That court ultimately determined that the revocation of McClure's license by the Arkansas Board of Certified Court Reporters was punishment enough. Other than imposition of court costs, the Arkansas Supreme Court issued no further sanctions against McClure. In Hamilton v. Jones, 351 Ark. 561, 95 S.W.3d 809 (2003), another Arkansas court reporter pled guilty to contempt for failing to file an appellate transcript on time. She was sanctioned $100 after the court found mitigating circumstances.
¶ 21. In Matter of Hatfield, 607 N.E.2d 384 (Ind.1993), the Supreme Court of Indiana jailed a court reporter for seven days for willfully disobeying a court order. *1280 She was found guilty of indirect criminal intent. The court concluded, however, that it would reconsider the jail sentence if the court reporter could show that she had completed the transcript by the time she was to report to jail.
¶ 22. In the case of In re Miles 55 S.W.3d 203 (Tex.App.2001), the Texas Court of Appeals sanctioned court reporter Jacqueline Miles $500 and ordered her jailed for three days for failing to complete and file transcripts. In another Miles case, In re Miles, 64 S.W.3d 445 (Tex.App. 2001), the Texas court again ordered court reporter Miles to be jailed. This situation was civil in nature as she was ordered to remain jailed until she completed the transcript in question. In the case of In re Ryan, 993 S.W.2d 294 (Tex.App.1999), another Texas court reporter received monetary sanctions after being found in criminal contempt of the appellate court.
¶ 23. After a full review of the record in this matter, we find that William M. Hoppock is in constructive criminal contempt of this Court for his repeated failures to file trial transcripts for appeals and to abide by our orders. Specifically, in the Spang, Tullos, Moore and Strain cases, Hoppock was directed to complete the trial transcripts by a date certain. When he failed to complete his work and when he failed to show cause for his failures, he received monetary sanctions in each of those cases. Monetary sanctions alone were ineffective and Hoppock still refused to file the transcripts. By orders entered in August and September of 2002, Hoppock was removed as court reporter in each of those three cases. The orders in each of those cases specifically required Hoppock to assist his replacement by immediately transferring his tapes, notes and other transcription materials to the replacement court reporter. Despite that clear order, Hoppock made no effort to cooperate with his replacement until October 28, 2002, which was the day before the initial show cause hearing before this Court in this matter. Even then, his attempt to transfer the court reporter material was not helpful as the notes and tapes were not presented in any organized fashion. Additionally, our order of October 10, 2002, required Hoppock to bring all remaining tapes and notes to the hearing on October 29. Hoppock appeared at that hearing without some of the materials in the Spang, Moore and Strain cases. We find that Hoppock has willfully and deliberately ignored several of our orders related to those three cases. He failed to file the trial transcripts on time in each of those cases and then when he was removed and ordered to assist his replacement, he ignored those orders and made no attempts to comply with those orders. The appeals in each of those cases were delayed as a direct consequence of Hoppock's repeated failures to perform his court reporter duties and to comply with our orders.

CONCLUSION
¶ 24. The position of court reporter is of crucial importance in the efficient administration of the judicial system of this State. It is impossible for the appellate courts to perform their obligations without accurate trial court records. Until the trial court transcript is completed and filed by the court reporter, an appeal can not proceed. Orderly and prompt appellate consideration is of obvious importance to all litigants who appear before this Court or the Mississippi Court of Appeals. Through his repeated failure to complete trial transcripts in a timely manner, Hoppock has had a serious negative effect on the efficiency of this Court. Hoppock repeatedly ignored orders requiring him to complete transcripts. He then ignored *1281 other orders mandating that he turn over his tapes and notes to the replacement court reporter.
¶ 25. We find that Hoppock's conduct cannot be condoned and that William M. Hoppock is in willful constructive criminal contempt of this Court for his repeated failure to comply with our orders. We revoke the court reporter certification of William M. Hoppock as of the date of this opinion. We further find that Hoppock should pay all costs of the contempt proceedings in this matter. Costs incurred in the two hearings, including attorney's fees and court reporter's fees, are assessed against Hoppock and shall be paid within thirty days of the issuance of a separate order assessing costs.
¶ 26. COURT REPORTER WILLIAM M. HOPPOCK IS FOUND IN WILLFUL CONSTRUCTIVE CRIMINAL CONTEMPT OF THIS COURT, HIS COURT REPORTER CERTIFICATION IS HEREBY REVOKED, AND COSTS ARE ASSESSED AGAINST HOPPOCK AND SHALL BE PAID WITHIN THIRTY DAYS OF THE ISSUANCE OF A SEPARATE ORDER ASSESSING COSTS.
PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.